UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:24-CR-158 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| JAMES MAHON, IV, | : | |
| Defendant. | : | (Electronically Filed) |

UNITED STATES OF AMERICA'S BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States files this brief in opposition to defendant James Mahon's Motion to Dismiss the Indictment. For the reasons discussed below, the Court should deny the Defendant's motion.

BACKGROUND

Tammac Holdings Corp. (Tammac) was a Luzerne County based company operating in the manufactured home industry. Indictment ¶¶ 3–4. Tammac originated loans to manufactured homeowners: mortgages for those who owned the land on which the manufactured home sat; and chattel loans for manufactured homes located in trailer parks. Id. ¶ 4. Tammac generated revenue from originating loans and bundling loans into portfolios that were sold to FDIC-insured banks and investors. Id. ¶¶ 4–5. Tammac also earned income by entering servicing agreements whereby Tammac continued to service the sold loans. Id.

In 2018 and 2019, LL Funds, a Philadelphia-based investment firm, purchased Tammac through two stock purchase agreements. Id. ¶ 10. Prior to the acquisition, LL Funds hired an investment bank to conduct a due diligence evaluation of Tammac. Id. ¶¶ 10, 11, 20, 21. After its purchase of Tammac, LL Funds retained many of Tammac's officers, managers, and employees, including Defendant who had served as vice-president, Jeffrey Poth who had served as president, and Joel Gillick who had served as compliance officer. Id. ¶¶ 1–2.

Not long after its acquisition of Tammac, LL Funds learned that Defendant, Gillick and other officers and employees had been engaged in a decade long conspiracy to defraud banks and investors in connection with the sale of loan portfolios, the servicing of loan portfolios, and the sale of Tammac to LL Funds. Id. ¶¶ 4–12, 14–25.

In June 2024, a grand jury indicted Defendant and Joel Gillick in connection with the fraud scheme. Doc. 1. Count 1 of the Indictment charged Defendant and Gillick with conspiracy to commit bank fraud, wire fraud, and mail fraud in violation of 18 U.S.C. §1349. Counts 2–5 charged bank fraud in violation of 18 U.S.C. §1344 and Counts 5–7 charged wire fraud in violation of 18 U.S.C. §1343. Id.

On July 24, 2024, Jeffrey Poth, Tammac's former president pleaded guilty to an Information charging him with conspiring to commit wire and mail fraud in violation of 18 U.S.C. §371. Doc. 13, Docket No. 3:24-CR-159. On January 24, 2025, Joel Gillick pleaded guilty to Count 1 of the Indictment which charged him with conspiracy to commit bank fraud, wire fraud, and mail fraud in violation of 18 U.S.C. §1349. Doc. 51.

## ARGUMENT

I. <u>The Legal Standard</u>

Rule 7(c) of the Federal Rule of Criminal Procedure requires an Indictment to "be a plain, concise, and definitive statement of the essential facts charged." In the Third Circuit, "an indictment is deemed sufficient so long as it (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows a defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Rankin, 870 F 2d 109, 112 (3d Cir. 1989). The Third Circuit explains that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his

defense and to invoke double jeopardy in the event of a subsequent prosecution." *Id.*

In its analysis of Defendant's motion to dismiss, this court must accept as true all the facts properly pled in the indictment and may grant the motion to dismiss only where the allegations in the indictment are insufficient to sustain a conviction for the offense charged. United States v. Besmajian, 910 F2d 1153,1154 (3d Cir. 1990). Moreover, this court should read the indictment as a whole and interpret in a commonsense manner." United States v. Menendez, 137 F. Supp. 3d 688, 692 (D.N.J. 2015). Finally, this Court should uphold the Indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense. United States v, Willis, 844 f3d 155, 162 (3d Cir. 2016).

    II.  <u>The Indictment Sufficiently Pleads the Offenses of Conspiracy, Bank, Wire, and Mail Fraud</u>

        a. <u>In Accordance with the Third Circuit Precedence, the Indictment Tracks the Language of the Statutes Charged</u>.

The Third Circuit has long established that an indictment that "tracks the language of the statute is sufficient." United States v. Olatunji, 872 F. 2d 1161,1168(3d Cir. 1989). In this case, a comparison

4

of the statutory language with the offenses charged Count 1 unquestionably establishes the Indictment easily satisfies this standard.

Count 1 charges conspiracy to commit bank, wire, and mail fraud in violation 18 U.S.C. §1349. Section 1349 states that "any person who attempts or conspires to commit any of the offenses under this chapter shall be subject to the same penalties as prescribed for the offense, the commission of which was the object of the conspiracy."

Paragraph 13 of Count 1 states: "From in or about 2008, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about September 2021, in the Middle District of Pennsylvania, and elsewhere, the defendants, JAMES MAHON IV and JOEL GILLICK, *knowingly and willfully conspired, combined, confederated, and agreed together, and with other persons. . . .* " to commit bank fraud, wire fraud, and mail fraud. Thus, this paragraph pleads the essential elements of a §1349 charge.

This same analysis establishes that the government has sufficiently pleaded the elements of bank, wire, and mail fraud offenses, the commission of which are the object of the §1349

conspiracy. . The bank fraud statute, 18 U.S.C. §1344 provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

Paragraph 13(a) pleads the bank fraud offense. It alleges Defendant conspired to: "knowingly execute a scheme and artifice to defraud and to obtain the moneys, funds, credits, assets, and other property owned by and under the custody and control of financial institutions whose deposits were insured by the FDIC, by means of material false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344."

Title 18 U.S.C. §1343, the wire fraud statute states: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be

6

transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

Count 1, Paragraph 13(b) pleads the wire fraud offense: Defendant conspired to "with the intent to defraud, knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing, advancing, furthering, and carrying out the scheme and artifice to defraud, knowingly transmitted and caused others to transmit by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343."

Last, the mail fraud statute, 18 U.S.C. §1341 provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . and for the purpose of executing such scheme or artifice or attempting so to do, places in any

7

post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, . . . shall be fined under this title or imprisoned not more than 20 years, or both."

Count 1, Paragraph 13(c) pleads the mail fraud offense: Defendant conspired to : "with the intent to defraud, knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing, advancing, furthering, and carrying out the scheme and artifice to defraud, knowingly delivered and caused others to deliver by mail and a private and commercial interstate carrier, according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, any matter or thing, in violation of Title 18, United States Code, Section 1341[1]."

---

[1] Likewise, the substantive bank fraud charges in Counts 2–-4, and the substantive wire fraud charges in in Counts 5–7 track the language of §§1344 and 1343. Indictment ¶¶ 27 and 30.

8

Thus, in pleading the offenses, the government has unquestionably tracked the statutes. By doing so the government has sufficiently pleaded the elements of each offense in accordance with the long established Third Circuit standard.

    b. <u>The Government has Pleaded Sufficient Facts to Permit the Defendant to Prepare for Trial and Invoke Double Jeopardy</u>.

Moreover, the Indictment goes further than simply tracking the statutory language. The Indictment pleads sufficient facts "to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Rankin, 870 F 2d at 112. In particular, the government pleads the following facts:

Tammac generated revenue by bundling loans into portfolios that were sold to investors, and to financial institutions. Indictment ¶ 4. Tammac entered servicing agreements with those financial institutions and investors who purchased loan portfolios. Id. ¶ 5. Pursuant to the terms of servicing agreements, Tammac serviced the loans in the portfolios in exchange for servicing fees or, an interest stream known as the "interest only strip income." Id.

These servicing agreements contained provisions known as "trigger events." Id. ¶ 6. The trigger event provisions provided the

financial institutions and investors with recourse against Tammac upon occurrence of certain events. Id. The conditions that activated the trigger events included exceeding delinquency thresholds and repossession thresholds in the loan portfolios. Id. If a trigger event was hit, the financial institutions and investors could require Tammac to repurchase the delinquent loans, reduce or eliminate the servicing fees and interest only strip, and replace Tammac as the loan portfolio's servicing entity. Id.

Financial Institution #1, Financial Institution #2, Financial Institution #3, and Institutional Investor #1 purchased Tammac loan portfolios. Id. The conspirators agreed to prevent activating Tammac's recourse obligations under the trigger event provisions of the servicing contracts, including those contracts with Financial Institution #1, Financial Institution #2, Financial Institution #3, and Institutional Investor #1. Id. ¶ 14.

The objective of the conspiracy was for Defendant and his conspirators to cause Tammac to retain its servicing agreement fees and interest only strip income, retain their personal employments and compensation, and cause Investor #1 to purchase Tammac and Tammac

loan portfolios. Id. ¶12. The conspirators agreed to do so by fraudulently suppressing, and causing others to suppress, the delinquency rates and repossession thresholds. Id. ¶ 14.

To suppress the delinquency rates and repossession thresholds, the conspirators made payments on delinquent loans, supplemented repossession losses, and caused others to make payments on delinquent loans and supplement repossession losses. Id. ¶15. The conspirators used monies from Tammac's own company funds, the proceeds of repossession sales, and other borrowers' loan payments. Id. These payments on delinquent loans, and to supplement repossession losses, were referred to as "fake payments," "non-cash payments," and "Y payments." Id.

Additionally, the conspirators used the United States mail and private and commercial carriers, to obtain, and cause others to obtain, money orders in the names of delinquent borrowers, using Tammac company funds, to make the fake payments and conceal the true nature of the fake payments. Id. ¶ 16. The Indictment further alleges that the conspirators concealed and caused others to conceal the fake payments in Tammac's books, records, and computer systems. Id. ¶ 17.

The conspirators provided and caused others to provide by interstate wires, and United States mail and private and commercial carriers, monthly reports to Financial Institutions #1, #2, and #3, and Institutional Investor #1, that contained false and inaccurate information, including about delinquency rates, repossession losses, and repossession sales. Id. ¶ 18.

The conspirators provided and caused others to provide, financial statements and reports containing false and inaccurate information, to third party auditors and financial institution auditors. Id. ¶19.

The conspirators provided and caused others to provide, via the interstate wires, false and inaccurate information about Tammac, to Investment Firm #1 during due diligence, including through Investment Firm #2. Id. ¶ 20.

The Indictment specifically pleads that false and inaccurate information included false and inaccurate financial statements and reports, and false and inaccurate projected earnings for Tammac. Id.

The conspirators concealed and misrepresented, and caused others to conceal and misrepresent, the true nature of fake payments, from and to Investment Firm #1 during the due diligence prior to the

purchase of Tammac. Id. ¶ 21. The conspirators used fraudulent misrepresentations to caused Investment Firm #1 to purchase Tammac via interstate wire transfers. Id. ¶ 22.

Throughout the period of the scheme, the conspirators caused Tammac to collect servicing fees and interest only strip income, to which it was not entitled, and to avoid repurchasing delinquent loans, from Financial Institution #1, Financial Institution #2, Financial Institution #3, and Institutional Investor #1. Id. ¶ 25.

These factual allegations are more than sufficient to put Defendant on notice of the charges against him and allow him to prepare his defense. Accordingly, the government has satisfied the standard for pleading.

III. <u>Defendant's Legal Analysis is Flawed</u>

A reading of Defendant's brief underscores that Defendant miscomprehends fundamental pleading requirements and the elements of the offenses charged. Defendant's legal analysis improperly conflates the sufficiency of the government's pleading with the sufficiency of the government's evidence. By doing so Defendant inappropriately increases the government's burden at this pre-trail stage. A defendant

13

cannot use a motion to dismiss to challenge the sufficiency of the government's evidence, make credibility determinations, or weigh the proof of the government's case. United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012).

    One flaw in Defendant's argument is that not one of the facts he argues that the government should have pleaded are elements of the charged offenses. For example, Defendant argues the government failed to allege: 1) how the Defendant caused others to send emails with attachments; 2) what was false or inaccurate about the specific emails and attachments in Counts 2–7; 3) who created the attachments with the allegedly false information; 4) who provided the allegedly false information in the email attachments; 5) the specifics about the July 19, 2019, email Defendant sent; 6) that Defendant obtained money or property belonging to a financial institution by means of Defendant's actions; 7) that Defendant, a salaried employee, received the service agreement fees and strip income allegedly fraudulently obtained; 8) how Defendant benefitted from the fraudulently obtained service agreement fees and strip income; and, 9) that Defendant personally received

property or funds from a financial institution or investor. Defendant's BIS, p. 8 and 10.

Not even one of these alleged facts are elements of the offenses charged. In addition, Defendant does not cite to a single authority to support his argument that the government is required to plead extraneous facts such as these when charging bank, wire, and mail fraud.

Moreover, another point Defendant argues reveals a misunderstanding of the elements of federal fraud statutes. Defendant argues the Indictment fails to allege how he benefited from the fraud scheme. Yet, the aim of a scheme to defraud is to deprive the victim of money or property. Thus, the government need not prove that the defendant benefitted personally from the scheme to defraud. United Sates v. Riley, 621 F. 3d 312 (3d Cir. 2010).

## CONCLUSION

For the reasons stated above, this Court should deny the Defendant's Motion to Dismiss.

Respectfully submitted,

JOHN C. GURGANUS
Acting United States Attorney

Date: February 7, 2025	By:	/s/ Joseph J. Terz
JOSEPH J. TERZ
Assistant U.S. Attorney
PA 55480
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
Fax: (717) 221-4493
joseph.terz@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, the foregoing document was served on counsel for the Defendant through electronic case filing, addressed to the following:

    Dennis E. Boyle, Esquire
    dboyle@boylejasari.com

                                        /s/ Joseph J. Terz
                                        JOSEPH J. TERZ
                                        Assistant U.S. Attorney