IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff** | : | No. 3:24cr158-1 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JAMES MAHON, IV,<br>**Defendant** | : | |

## MEMORANDUM

Before the court is a motion to dismiss the indictment filed by Defendant James Mahon, IV pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Having been fully briefed, the motion is ripe for disposition.

**Background**

On June 25, 2024, a grand jury returned an indictment against Mahon and a co-defendant, Joel Gillick, charging them with the following crimes:

- **Count 1** – bank, wire, and mail fraud conspiracy, in violation of 18 U.S.C. § 1349;

- **Counts 2-5** – bank fraud, in violation of 18 U.S.C. § 1344; and

- **Counts 6-7** – wire fraud, in violation of 18 U.S.C.§ 1343.

(Doc. 1).

Specifically, the indictment alleges that Defendant Mahon was the Vice President of Tammac Holdings Corporation ("Tammac"), a corporation with a

principal place of business in Luzerne County, Pennsylvania.[1] (Id. ¶ 1). Tammac's business operations included loan originations from the purchase of manufactured homes. (Id. ¶ 4). Tammac also bundled loans into portfolios that were sold to investors, such as financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC"). (Id.)

After sale of the loan portfolios, Tammac often entered into servicing agreements with these financial institutions and investors. (Id. ¶ 5). Pursuant to those servicing agreements, Tammac continued to service the loans in exchange for collecting a servicing fee or, as with the private placement securitizations, an interest stream known as the "interest only strip." (Id.) The indictment alleges that three financial institutions purchased loan portfolios from Tammac and entered into servicing agreements with that entity. (Id. ¶ 7). Additionally, an institutional investor purchased Tammac loan portfolios through private placement securitizations and entered into service agreements. (Id. ¶ 8).

In servicing the loans, Tammac's duties included: 1) receiving monthly payments from borrowers and remitting those payments to the appropriate financial institutions and investors; 2) attempting to collect payments from

---

[1] In considering the motion to dismiss, the court must accept as true the factual allegations set forth in the indictment. United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir.1990). But, in reviewing a motion to dismiss, a district court must consider only the facts alleged in the indictment. United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007). The court will not consider matters extraneous to the indictment offered by the government in its opposition brief.

delinquent borrowers; and 3) overseeing foreclosure and repossession processes and sales. (Id.)

The service agreements contained provisions known as "trigger events." (Id. ¶ 6). The trigger event provisions afforded the financial institutions and investors with recourse against Tammac upon occurrence of an antecedent condition. (Id.) The conditions that activated the trigger events included exceeding delinquency thresholds and repossession loss thresholds in the loan portfolios. (Id.)

The financial institutions and investors could impose financial consequences on Tammac for hitting a trigger event, including: 1) requiring Tammac to repurchase delinquent loans; 2) reducing, pausing, or eliminating the servicing fees and "interest only strip" collected by Tammac; and 3) replacing Tammac as the loan portfolio's servicing entity. (Id.)

Between approximately March 2017 and August 2020, an investment firm purchased Tammac in two stock purchase agreements following a due diligence process. (Id. ¶ 10). This investment firm, through an affiliated entity, also purchased loan portfolios from Tammac. (Id.) A second investment firm served as a broker during the purchase of Tammac and the purchase of Tammac's loan portfolios. (Id. ¶ 11).

3

As alleged, from 2008 until September 2021, Defendant Mahon and coconspirators "agreed to prevent activating Tammac's recourse obligations under the trigger event provisions of the servicing contracts[.]" (Id. ¶¶ 13, 15). The government contends that Mahon and coconspirators "artificially and fraudulently suppress[ed], and caus[ed] others to suppress, delinquency rates and repossession losses in [the] serviced loan portfolios." (Id. ¶ 15).

They allegedly did so through a fake payment scheme, that is, they used Tammac money to obtain money orders in the names of delinquent borrowers to make fake payments on delinquent loans. (Id. ¶¶ 15-16). They also concealed the fake payment scheme in Tammac's books and records provided to the financial institutions, institutional investor, and the investment firm that ultimately purchased Tammac and its loans. (Id. ¶¶ 17–24). Throughout the scheme, which allegedly continued after Tammac's purchase by the investment firm, Mahon and coconspirators caused Tammac to collect servicing fees and interest streams from the financial institutions and institutional investor and avoided Tammac having to repurchase delinquent loans. (Id. ¶ 25). The government uses the above details regarding the alleged fake payment scheme to charge Mahon with conspiracy to commit bank and wire fraud.

As for the alleged violations of the bank fraud statute, Mahon and others are accused of knowingly executing the above scheme to defraud and obtain

money from the financial institutions. (Id. ¶ 27). Mahon and others are also accused of submitting false financial information on four occasions to these financial institutions to obtain that money. (Id. ¶ 28). Each submission comprises Counts 2-5 in the indictment. (Id.) Count 3 accuses Mahon of personally emailing a financial institution on July 19, 2019 with "false and inaccurate delinquency and repossession information." (Id. ¶ 28, Count 3). The three other emails to the financial institutions were not sent by Mahon.

Similarly, on the wire fraud charges, Mahon and others are accused of knowingly executing the above scheme to defraud and obtain money from the institutional investor and the investment firm brokering Tammac's purchase based upon October 2020 and April 2021 emails attaching false and inaccurate information. (Id. ¶¶ 30, 31). These emails comprise Counts 6 and 7 of the indictment. (Id. ¶ 31). Mahon is not accused of personally sending any emails on the wire fraud charges.

Mahon entered a plea of not guilty on June 27, 2024. (Doc. 14). On December 20, 2024, Mahon filed the instant motion to dismiss the indictment along with a brief in support. (Docs. 43, 43-1). The government filed its opposition brief on February 7, 2025 after receiving two extensions. (Doc. 53). Mahon responded with a reply brief on February 23, 2025, (Doc. 54), which brings this matter to its present posture.

**Standard of Review**

Mahon filed a motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to state an offense.[2] Rule 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to ensure that legally deficient charges do not go to a jury. United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2011).

To state an offense, an indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). The indictment also must provide "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Id.

An indictment is deemed sufficient if it:

> (1) contains the elements of the offense intended to be charged,
>
> (2) sufficiently apprises the defendant of what he must be prepared to meet, and
>
> (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

United States v. Fattah, 858 F.3d 801, 814 (3d Cir. 2017) (quoting United States v. Stevenson, 832 F.3d 412, 423 (3d Cir. 2016))(formatting modified).

---

[2] The court has jurisdiction pursuant to 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

"Moreover, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and to invoke double jeopardy in the event of subsequent prosecution.'" United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007)(quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)).

Thus, an indictment is generally sufficient where it "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012), abrogated on other grounds by Rehaif v. United States, 588 U.S. 225, 227 (2019) (quoting United States v. Urban, 404 F.3d 754, 771 (3d Cir. 2005)). "In contrast, if an indictment fails to charge an essential element of the crime, it fails to state an offense." Id. (citing United States v. Wander, 601 F.2d 1251, 1259 (3d Cir. 1979)).

In reviewing the sum of Mahon's arguments, the court must also note that a pretrial motion to dismiss is not a permissible vehicle for addressing the sufficiency of the government's evidence. See United States v. Gilette, 738 F.3d 63, 74 (3d Cir. 2013) (citation omitted). "[A] district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." Huet, 665 F.3d at 595–96 (citations omitted). Moreover, a

7

district court should generally uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." United States v. Willis, 844 F.3d 155, 162 (3d Cir. 2016) (quoting Vitillo, 490 F.3d at 324).

**Analysis**

After careful review of the indictment and Mahon's arguments, the motion to dismiss the indictment will be denied. As discussed below, the indictment sufficiently contains the elements of each offense charged, provides Mahon with sufficient facts to prepare for trial, and is specific enough regarding the alleged offense conduct for the defendant to invoke double jeopardy in the event of subsequent prosecution.

**a. Bank Fraud**

Since three financial institutions were allegedly sent false information concealing the fake money order payment scheme, Mahon is accused of violating the federal bank fraud statute, 18 U.S.C. § 1344. That statute makes it a crime to knowingly execute (or attempt to execute) a scheme or artifice to defraud a financial institution, "for example, a federally insured bank." Shaw v. United States, 580 U.S. 63, 65 (2016)(citing 18 U.S.C. § 1344(1); 18 U.S.C. § 20).

The bank fraud statute also makes it a crime to knowingly execute a scheme to "obtain any of the moneys, funds, credits, assets, securities, or other

8

property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2). Put another way, Section 1344(2) requires that a defendant knowingly execute, or attempt to execute, a scheme or artifice with at least two elements: 1) that the defendant intended to obtain any of the moneys or other property owned by, or under the custody or control of, a financial institution; and 2) that the envisioned result—i.e., the obtaining of bank property—occur by means of false or fraudulent pretenses, representations, or promises. Loughrin v. United States, 573 U.S. 351, 356 (2014)(reviewing the statutory language of 18 U.S.C. § 1344(2)).

  The indictment checks all boxes regarding the elements of both 18 U.S.C. § 1344(1) and § 1344(2). The indictment also apprises Mahon of what he must be prepared to defend against at trial and provides specificity for any future invocation of double jeopardy. For example, the scheme alleged involves the fake payments, wherein Mahon and others are accused of causing money orders in the name of the delinquent borrowers to be obtained using Tammac money to make it appear that delinquent loans were being paid. The scheme also allegedly involved misrepresenting information in the company books and records and then sending those records to the financial institutions. As alleged, such conduct kept the service fees flowing to Tammac from the financial

institutions under the loan servicing agreements (without entitlement) and avoided the triggering events in those agreements that would cause contractual consequences to the company, such as: reduction or elimination of those servicing fees, repurchasing of delinquent loans, or losing the servicing agreements with the financial institutions.

Mahon challenges the bank fraud allegations by arguing that the indictment lacks details about his personal involvement. (Doc. 43, Def. Br. in Supp. at 5). Although the indictment alleges that Mahon sent an email with false financial information attached to a financial institution, Mahon argues that the indictment should contain more information. (Id.) Additionally, as for allegations that he caused others to submit the other emails not bearing his name, Mahon argues that the indictment should answer questions such as "how [defendant] allegedly caused others to submit their emails, what false or inaccurate information was contained in the attachments to the emails, who created these attachments, who provided the information contained in the attachments." (Id.) These arguments, however, are clear challenges to the sufficiency of the government's evidence, which are improper to consider at this stage.

Additionally, in attacking whether the government has appropriately alleged violations of 18 U.S.C. § 1344(2), Mahon argues that, to sustain the charge, the government must aver that he was the personal beneficiary of the money

10

obtained from the financial institutions. (Id. at p. 5-6). In furtherance of this argument, he asserts that he "was an employee of Tammac and received nothing of value from any institution or investor[.]" (Id. at p. 1).

The bank fraud statute does not expressly require that the defendant seek to personally obtain bank property. It is not a listed element of the offense. Accordingly, in a prosecution for bank fraud, "it [is] not necessary for the [g]overnment to demonstrate that [defendant] personally benefitted from his scheme."[3] United States v. Goldblatt, 813 F.2d 619, 624–25 (3d Cir. 1987)(citing United States v. Williams, 728 F.2d 1402, 1405 (11th Cir.1984); United States v. George, 477 F.2d 508 (7th Cir.), cert. denied, 414 U.S. 827 (1973); Freeman v. United States, 20 F.2d 748, 749 (3d Cir. 1927)). Consequently, Mahon's motion to dismiss the bank fraud counts in the indictment will be denied.

### b. Wire Fraud

As for the counts of wire fraud, this statute "criminalizes 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.' " United States v. Porat, 76 F.4th 213, 218 (3d Cir. 2023)(quoting 18 U.S.C. § 1343).

---

[3] Even so, the indictment alleges that the objects of the scheme were, *inter alia*, for Mahon and coconspirators to "retain their personal employments and compensation." (Doc. 1, ¶ 12).

As with the above analysis regarding the bank fraud counts, the indictment sufficiently details the "scheme or artifice to defraud" or the "scheme or artifice...for obtaining money or property" through allegations regarding the fake money order payment scheme and coverup[4], which was allegedly designed to serve the same purposes as detailed with the financial institutions (continued flow of servicing fees and interest streams without entitlement), but as applied to the institutional investor. Similarly, the "means of the false or fraudulent pretenses, representations, or promises" is met by allegations regarding false financial records, which were sent to the institutional investor to maintain payments of fees/income and to avoid the triggering events in the servicing agreements. Additionally, the indictment details allegations that covering up the fake payment scheme caused an investment firm to purchase Tammac and Tammac loan portfolios. (Doc. 1, ¶ 12). Specifically, an email with false and inaccurate information was sent to a second investment firm involved in brokering the transaction involving Tammac's purchase by the other investment firm. (Id. ¶¶ 10-11, 31).

---

[4] The court uses the shorthand "coverup" to include allegations that Mahon and others fraudulently suppressed delinquency rates and repossession losses in the loan portfolios, misrepresented Tammac's financial information, and concealed delinquency and repossession information as to the institutional investor and the two investment firms listed in the indictment. (Doc. 1, Indictment, ¶¶ 12, 14, 17-25, 31).

The court similarly rejects Mahon's arguments as to personal involvement as a challenge to the sufficiency of the government's proof, not as a challenge to the indictment. Furthermore, Mahon's arguments about him personally "not receiving anything of value" are not persuasive in light of Third Circuit precedent. See Porat, 76 F.4th at 222. In Porat, the former dean of Temple University's business school was convicted for his scheme to elevate the school in magazine rankings through submitting false data about the school, which led to more tuition dollars for the institution. Id. at 216–217. The appellate court affirmed the judgment of conviction on charges of wire fraud and conspiracy to commit wire fraud after the defendant moved to dismiss the indictment before trial and filed post-trial motions for acquittal or for a new trial. Id. at 218-223. Specifically, the court concluded that the government did not have to prove that the object of the defendant's scheme was to personally obtain money. Id. at 221–222. Just as a scheme to obtain money for Temple sustained a wire fraud conviction in Porat, the government's allegations about a scheme to obtain money for Tammac is sufficient to sustain the wire fraud counts against Mahon in this case. Mahon's motion to dismiss the wire fraud counts in the indictment will thus be denied.[5]

---

[5] Mahon's motion to dismiss the conspiracy count of the indictment rests on an argument that the government failed to state offenses for bank fraud and wire fraud. Since the indictment is sufficient as to those charges, the motion to dismiss the conspiracy charge, 18 U.S.C. § 1349, will also be denied.

13

**Conclusion**

For the reasons set forth above, Defendant James Mahon, IV's motion to dismiss the indictment (Doc. 43) will be denied and this matter will be listed for trial. An appropriate order follows.

Date: 3/10/25

JUDGE JULIA K. MUNLEY
United States District Court